IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

RYAN MACAULAY,

*Defendant.*

Case No. 1:24-cr-180-PTG

FILED IN OPEN COURT
APR 15 2025
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## STATEMENT OF FACTS

The United States and the Defendant, RYAN MACAULAY, stipulate that the allegations in the Superseding Indictment are true and correct. The United States and the Defendant further stipulate that had the matter gone to trial, the United States would have proven the allegations in the Superseding Indictment and the following facts beyond a reasonable doubt through admissible and credible evidence.

*Introduction*

1. MACAULAY was a co-founder of a fitness center called BYNDfit. BF Chinatown LLC, BF Georgetown Waterfront LLC, and BF Management LLC (collectively, the "BYNDfit entities") were created to facilitate the operation of BYNDfit. MACAULAY co-founded BYNDfit with Raymond Rahbar and Carl Pierre.

2. Bank-1, Bank-2, Bank-3, and Bank-4 provided a range of traditional banking services throughout the United States, including in the Eastern District of Virginia, and are financial institutions for purposes of Title 18, United States Code, Sections 20 and 1344.

3. The Small Business Administration ("SBA") was an agency within the United States Government that provided financial assistance to small businesses, including administering and financing the Paycheck Protection Program ("PPP"). The SBA's computer

1

servers receive information about PPP loan applications and are located within the Eastern District of Virginia.

4. The Paycheck Protection Program ("PPP") was an SBA program that provided low-interest financing to small businesses to pay up to 8 weeks of payroll costs including benefits. Businesses that qualified for funds could also use that money to pay interest on mortgages, rent, and utilities. The money to fund this program came from the United States Treasury.

5. The SBA was authorized to provide PPP loans of up to $10 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. The amount of the loan was determined by the number of employees the applicant certified having.

6. To obtain a PPP loan, a qualifying business was required to submit an application to an eligible private lender, such as a federally insured bank, a federally insured credit union, Farm Credit System institution, or a Small Business Administration-approved lender, and provide documentation about its operations to support the amount of the loan applied for, such as payroll reports, payroll tax filings, Form 1099-MISC, or a sole proprietor's income and expenses. An applicant for a PPP loan was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

7. After a PPP application was submitted and approved to the private lender, the SBA would reimburse the lender. The amount of the loan, if the application was approved, was based on an applicant's stated number of employees, salary, expenses, and revenue. If the company that received the PPP loan could not pay it back, it could seek to have that loan forgiven.

8.   Every PPP application interacted with the SBA E-Tran server located in Sterling, Virginia. Additionally, SBA transmitted the PPP processing fee to the lender through the FMS server, also located in Sterling, Virginia. Sterling, Virginia is within the Eastern District of Virginia

### *The Scheme to Defraud*

9.   Between on or about April 2020 and June 2021, in the Eastern District of Virginia and elsewhere, the defendant RYAN MACAULAY did knowingly and willfully conspire, confederate, and agree with others known and unknown to knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain any monies, funds, credits, and assets owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

10.  Specifically, MACAULAY, Rahbar, and Pierre applied for PPP loans with various financial institutions, including Bank-1, Bank-2, Bank-3, and Bank-4. In those applications, MACAULAY and his coconspirators inflated the number of employees who worked at the BYNDfit entities to increase their payroll costs and, as a result, obtain more money from the PPP lenders. MACAULAY and his coconspirators did this by submitting purported payroll summaries that listed as employees people who did not work for BYNDfit. In support of their applications, MACAULAY and his conspirators submitted fabricated tax forms that reflected their inflated employee count instead of the true number of employees.

11.  In reality, BYNDfit never opened to the public and never employed the number of people claimed.

12. For example, on the first draw PPP application for BF Management, MACAULAY claimed that BF Management employed 22 people and had an average monthly payroll of about $135,765.

13. In support of that application, MACAULAY submitted a Form 941 for Q1 2020 that claimed BF Management employed 22 people. This Form 941 was never filed with the IRS. In reality, the Form 941 submitted to the IRS listed one employee for BF Management during Q1 2020. Records from the Virginia Employment Commission confirmed that the representations on the PPP application were false.

14. MACAULAY knew that the applications he and his coconspirators submitted inflated the number of employees who actually worked at the BYNDfit entities. Based on the false representations included in the PPP applications, the BYNDfit entities received five fraudulent PPP loans.

*The Money Laundering Scheme*

15. Between on or about April 2020 and June 2021, in the Eastern District of Virginia and elsewhere, the defendant RYAN MACAULAY knowingly and intentionally combined, conspired, and agreed with each other and others known and unknown to the Grand Jury to knowingly engage in monetary transactions through a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity—namely, bank fraud—in violation of Title 18, United States Code, Section 1957.

16. Specifically, MACAULAY and Rahbar would use the fraudulently obtained PPP funds to conduct financial transactions. Often, MACAULAY would receive checks from the

BYNDfit entities which did not represent salary and would not be issued using BYNDfit's normal payroll processor. MACAULAY would deposit these checks into his personal account.

17. Many of these transactions involved the proceeds of the bank fraud scheme alleged above and were in excess of $10,000. For instance, on April 19, 2021, MACAULAY deposited into his personal account a $12,000 check written by Rahbar representing the proceeds of the scheme to fraudulently obtain a PPP loan on behalf of BF Chinatown.

## *Conclusion*

18. This statement of facts includes those facts necessary to support the plea agreement between MACAULAY and the United States. It does not include each and every fact known to MACAULAY or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. MACAULAY acknowledges that the foregoing statement of facts does not describe all of his conduct relating to the offenses charged in this case.

19. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Date: ___4/15/2025_____   By: _____
Christopher J. Hood
Kristin S. Starr
Avi Panth
*Assistant United States Attorneys*

5

After consulting with my attorney and pursuant to the plea agreement entered into this day between defendant, RYAN MACAULAY, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Ryan Macaulay
Defendant

I am the Defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
David B. Benowitz
Rammy G. Barbari
Counsel for Defendant