IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RAYMOND RAHBAR, JR.,<br>RYAN MACAULAY,<br><br>*Defendants.* | Case No. 1:24-cr-180-PTG |

**DECLARATION IN SUPPORT OF SENTENCING**

I, Sara Karol, herein declare as follows:

**I.   Introduction**

1.   I am a Forensic Accountant at the Federal Bureau of Investigation, and I have been so employed since 2020. I hold a Bachelor's of Science in Business degree in Accounting and Finance from the Kelley School of Business at Indiana University. I have been a Certified Professional Accountant, licensed in the state of Minnesota, since 2016, and a Certified Fraud Examiner since 2018. Prior to my employment at the FBI, I worked as an internal auditor at a Fortune 50 company for five years. I am assigned to support the FBI's investigation of Raymond Rahbar, Jr. ("Rahbar"), Ryan Macaulay ("Macaulay"), and others.

2.   I submit this declaration for the limited purposes of describing the losses suffered by the victims of the fraud scheme to which RAHBAR and MACAULAY have pled guilty, and outlining those specific amounts relating to the sentencing guidelines, forfeiture, and restitution.

3.   My ability to provide an informed and accurate assessment of this matter is based on my personal knowledge as well as information from other sources, including other law

1

enforcement officers involved in this case, financial records, and other records related to the investigation.

## II. Methodologies

4. To analyze the flow of funds, I reviewed the following 19 accounts, to include bank statements, check images, deposit slips, and wires:

   a. Atlantic Union Bank ("ATL") account ending in 7446 in the name of "BF Chinatown LLC,"

   b. ATL account ending in 8140 in the name of "AMC Building Group, Inc.,"

   c. Bank of America ("BOA") account ending in 2434 in the name of "Raymond Rahbar,"

   d. BOA account ending in 4897 in the name of "American Majestic Construction, LLC,"

   e. Freedom Bank ("FRDB") account ending in 1890 in the name of "AMC Building Group, Inc.,"

   f. FRDB account ending in 1938 in the name of "American Majestic Construction, LLC,"

   g. FRDB account ending in 1946 in the name of "BYND Holding, LLC,"

   h. FRDB account ending in 1930 in the name of "8533 Georgetown Pike, LLC,"

   i. FVC Bank ("FVC") account ending in 9020 in the name of "8533 Georgetown Pike, LLC,"

   j. FVC account ending in 9756 in the name of "IZ Best Bro, LLC,"

   k. FVC account ending in 0473 in the name of "8533 Georgetown Pike, LLC,"

   l. FVC account ending in 0523 in the name of "AMC Building Group, Inc.,"

    m. FVC account ending in 3782 in the name of "BYND Holding, LLC,"

    n. FVC account ending in 1918 in the name of "Mary Barr aka: Mahrou Rahemi & Raymond Rahbar, Jr.,"

    o. FVC account ending in 4649 in the name of "BF Management, LLC,"

    p. FVC account ending in 2519 in the name of "BYND Holding, LLC,"

    q. Legacy Bank ("LEG") account ending in 2938 in the name of "American Majestic Construction, LLC,"

    r. LEG account ending in 5661 in the name of "BF Georgetown Waterfront LLC," and

    s. SunTrust account ending in 7324 in the name of "American Majestic Construction, LLC."

5. To determine the ultimate destination of the funds, I utilized the Lowest Intermediate Balance Rule ("LIBR"), a tracing principle supported by the Fourth Circuit Court of Appeals. LIBR states that when fraudulent, or tainted, funds are deposited into an account and the balance in that account falls below the total amount of the tainted funds deposited, the tainted funds traceable to the account are limited to the lowest intermediate balance in the account between the time of the tainted funds deposit and when it is spent. In simpler terms, the principle assumes that untainted funds are spent prior to tainted funds. When the total balance of the account dips below the total tainted funds, the untainted funds are presumably spent, leaving the only choice for spending to be from tainted sources.

6. For the purposes of this declaration, all summary amounts are rounded to the nearest dollar.

### III. Loss Amount and Restitution

7.  To determine the loss amount, I aggregated the loan amounts stemming from applications by the defendants as part of the fraud scheme. A table with each entity's loan by type, lending institution, application date, deposit date, amount, and whether the application was successful is below:

| Entity | Type | Lender | Application Date | Success or Attempt | Deposit Date | Amount |
|---|---|---|---|---|---|---|
| BF Chinatown | PPP | Atlantic Union | 4/14/2020 | Success | 5/4/2020 | $662,155 |
| BF Georgetown | PPP | Legacy | 4/14/2020 | Success | 5/4/2020 | $328,100 |
| AMC Building Group | PPP | Atlantic Union | 4/27/2020 | Success | 5/5/2020 | $391,000 |
| American Majestic Construction | PPP | Legacy | 5/5/2020 | Success | 5/4/2020 | $391,000 |
| BF Management | PPP | Cross River | 7/1/2020 | Success | 7/1/2020 | $339,413 |
| 8533 Georgetown d/b/a AMC Building | PPP | Cross River | 8/8/2020 | Attempt | N/A | $344,766 |
| BF Chinatown | PPP (Draw 2) | Atlantic Union | 3/19/2021 | Success | 4/15/2021 | $384,400 |
| 8533 Georgetown | PPP | Cross River | 4/5/2021 | Attempt | N/A | $134,583 |
| AMC Building Group | PPP (Draw 2) | Atlantic Union | 4/7/2021 | Success | 4/19/2021 | $149,999 |
| American Majestic Construction | PPP (Draw 2) | Legacy | 4/7/2021 | Success | 4/13/2021 | $249,700 |
| BF Georgetown | PPP (Draw 2) | City First | 5/7/2021 | Attempt | N/A | $272,916 |
| BF Management | PPP (Draw 2) | City First | 6/1/2021 | Success | 6/1/2021 | $244,945 |
| AMC Building Group | EIDL | SBA | 11/30/2021 | Success | 12/14/2021 | $111,700 |
| **Total** | | | | | | ***$4,004,677*** |

8.  Per sentencing guidelines, the loss amount evaluated is the greater of actual and intended loss, which, in this matter, would be the aggregate of successful and unsuccessful loan applications. As such, the total loss amount for the 13 loan applications is $4,004,677.

4

9. Similarly, the amount owed in restitution is the full amount of the victim's loss, which, in this matter, is the sum of proceeds fraudulently obtained by the defendant(s) as a result of successful loan applications. Using the aforementioned table, the sum of loan proceeds from successful applications is $3,252,412.

**IV.    Forfeiture**

10. To evaluate the amount eligible for forfeiture, I used the aforementioned LIBR methodology. "Tainted" funds were considered to be the deposits of loan proceeds obtained as part of the fraud scheme as identified in the table above, totaling over $3.25 million, and include the following:

   a. On 4 May 2020, $662,155 was deposited into the ATL account ending in 7446.

   b. On 4 May 2020, $328,100 was deposited into the LEG account ending in 5661.

   c. On 4 May 2020, $391,000 was deposited into the LEG account ending in 2938.

   d. On 5 May 2020, $391,000 was deposited into the ATL account ending in 8140.

   e. On 1 July 2020, $339,413 was deposited into the FVC account ending in 3782.

   f. On 13 April 2021, $249,700 was deposited into the LEG account ending in 2938.

   g. On 15 April 2021, $384,400 was deposited into the ATL account ending in 7446.

    h. On 19 April 2021, $149,999 was deposited into the ATL account ending in 8140.

    i. On 1 June 2021, $244,945 was deposited into the FVC account ending in 3782.

    j. On 14 December 2021, $111,700 was deposited into the FRDB account ending in 1890.

11.    Using the LIBR tracing principle, I traced the flow of funds across the 19 bank accounts. The results of my analysis showed that a portion of the funds involved in the offense is traceable to RAHBAR and MACAULAY.

12.    For RAHBAR, approximately $102,625 was deposited directly into the BOA account ending in 2434, Rahbar's personal account, approximately $64,105 was deposited directly into the FVC account ending in 1918, in the name of Rahbar and his mother, and approximately $85,244 was paid to Rahbar's mother. Therefore, the total amount involved in the offense traceable to Rahbar is approximately $251,974.

13.    For MACAULAY, approximately $141,845 was paid to Ryan Macaulay and his wife, and approximately $43,400 was paid to Alyssa Medlin, Macaulay's sister-in-law. Therefore, the total amount involved in the offense traceable to the Macaulays is approximately $185,245.

*    *    *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on August 28, 2025

_____
Sara Karol
Federal Bureau of Investigation,
*Forensic Accountant*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on August 28, 2025

_____
Sara Karol
Federal Bureau of Investigation,
*Forensic Accountant*